**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 **v.**              **Case No. 06-CR-17**

**KIMBERLY MORELLI**
   **Defendant.**

---

## SENTENCING MEMORANDUM

  The government charged defendant Kimberly Morelli with bank fraud arising out of her scheme to syphon funds from accounts held by the bank at which she worked. Defendant, a personal banker, executed her scheme by making withdrawals from various accounts, representing that the withdrawals had been authorized by the account holders or someone acting on their behalf. She then diverted the money to her own use. On one occasion, she caused a cashier's check drawn on a customer's account to be made payable to a car dealer, representing the purchase price of a truck she bought for her boyfriend. Between 2003 and 2005, she stole more than $200,000 from six customers of the bank, most of whom were elderly and infirm. The largest amount was taken from a woman with Alzheimer's whose husband was legally blind and also suffering problems associated with dementia.

  Defendant pleaded guilty to the crime, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 20 (base level 7, U.S.S.G. § 2B1.1(a)(1), plus 12 based on the loss amount, § 2B1.1(b)(1)(G), plus 2 based on vulnerable victims, § 3A1.1(b)(1), plus 2 for abuse of a

position of trust, § 3B1.3, and minus 3 for acceptance of responsibility, § 3E1.1) and her criminal history category at I, producing an imprisonment range of 33-41 months. Neither party objected to the PSR, but prior to sentencing I provided notice of an issue with the § 3B1.3 enhancement, which enhancement the parties had not addressed in their plea agreement. Defendant also filed a memorandum requesting a non-guideline sentence. The government supported the § 3B1.3 enhancement and requested a sentence within the range.

In this memorandum, I provide the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005). First, I determine the advisory guideline range, resolving any disputes necessary to that determination. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

## II. DISCUSSION

### A. Guideline Determination

As noted, neither side objected to the PSR. However, I was upon my review of the PSR unclear about the recommended enhancement under § 3B1.3. That enhancement applies if "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."

2

U.S.S.G. § 3B1.3. Application note 1 explains:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3 cmt. n.1; see also United States v. Ellis, 440 F.3d 434, 437 (7th Cir. 2006) (stating that the enhancement applies if the defendant "(1) occupied a position of trust and (2) abused that position in a manner that significantly facilitated the commission or concealment of his offense").

In the present case, defendant worked as a personal banker. According to the PSR, she started with the bank as a teller and was later promoted to personal banker. It was not clear to me if the latter position was more like an "ordinary" teller or a bank executive: It depended on nature of the responsibilities and the degree of oversight in the job.

At sentencing, the government produced a witness from the bank and made a proffer of testimony. Based on that evidence, which defendant did not contest, I concluded that the enhancement applied. Defendant occupied a position that afforded her significant discretion. Unlike an ordinary teller, she had the discretion to order withdrawals from customers' accounts, something only she and the branch manager could do. She was also

3

subject to less supervision than an ordinary teller. She was, in effect, second in command at the bank. Further, she was someone trusted by customers and often asked for by name in dealing with their accounts. In fact, she had personal relationships with several of the victims. Further, her position facilitated the crime because she could order withdrawals and complete the necessary paperwork herself. She was also able to use her position to conceal the crime, telling her customers that the error in their statements was caused by a change over in the bank's computer system. Therefore, I applied the enhancement. See United States v. Dearborn, No. 92-30412, 1993 U.S. App. LEXIS 13285 (9th Cir. June 1, 1993) (applying the enhancement to a personal banker who made unauthorized withdrawals from accounts); see also United States v. Anderson, 259 F.3d 853, 863 (7th Cir. 2001) (applying enhancement to assistant branch manager who had access to accounts and could withdraw funds). That issue resolved, and neither side requesting a departure, I proceeded to imposition of sentence under § 3553(a).

**B.  Section 3553(a)**

In imposing sentence, the court must consider the factors set forth in § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

4

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

### 1. Nature of Offense

Defendant committed a very serious crime, stealing more than $200,000 from elderly and infirm customers of the bank where she worked. The crime was serious based not only on the amount but on the targets of the theft – those who were less likely to notice missing funds. For example, the Groff's, the main victims, suffered from Alzheimer's and dementia. Defendant's conduct amounted to a great betrayal of people who trusted her. Further, the thefts occurred over a two year period and thus did not constitute a one time lapse in judgment.

### 2. Character of Defendant

In comparison to the crime, defendant's character was quite positive. She was thirty-seven years old and had no prior record, adult or juvenile. She was a high school graduate with a solid employment history. She was also the mother of two children, ages twelve and sixteen, and was by all accounts an excellent mother. I received positive letters from defendant's daughter, mother, family friends and a former employer.

5

Defendant suffered significant health problems, including Crohn's disease, diverticulitis and obstructive pulmonary disease. She also had mental health issues, including depression, anxiety and panic disorder. It appeared that her health suffered significantly as a result of the stress associated with this case. Defendant also had a history of bulimia and self-esteem issues, and of involving herself with abusive men. Finally, she appeared to have issues with marijuana abuse, submitting a positive test while the case was pending. According to a letter from her psychologist, she had also used Oxycontin to calm herself.

### 3. Purposes of Sentencing

I saw no indication that defendant was dangerous, and given her lack of record she was not a risk of recidivism. Based on her statements to the PSR writer and her in-court allocution, she seemed genuinely and deeply remorseful for her conduct. As discussed, she had treatment needs, for physical and mental health issues, as well as possible substance abuse, which could be met in the community. However, given the seriousness of the crime, I concluded that I had to impose a sentence that included a substantial period of confinement in order to satisfy the needs for just punishment and deterrence of others tempted to steal. This appeared to be the type of crime to which general deterrence was particularly relevant. Defendant owed more than $200,000 in restitution, which she obviously could better pay in the community.

### 4. Consideration of Guidelines

The guidelines called for a term of 33-41 months. Under all of the circumstances, I found a sentence within that range somewhat greater than necessary to satisfy the

6

purposes of sentencing. The guidelines, while providing a sufficient measure of punishment, did not adequately account for several factors in this case.

First, the guidelines did not account for the significant positives in defendant's character, including her efforts in raising two children and her solid employment record. The letters attested to the good job she had done with her children. Her daughter was a straight A student and involved in several extra-curricular activities, as was her son. I was particularly impressed by the letter from defendant's daughter. I was also struck by the positive comments made by her ex-husband.

Second, defendant suffered significant collateral consequences as a result of this crime, providing punishment additional to that which I meted out. She lost primary custody of her children and the home in which she had been residing. In order to minimize the disruption to their lives, she ceded both custody and the home – which she obtained in divorce proceedings – back to her ex-husband, who moved into the family home with their children, while defendant moved back in with her parents. This showed some strength of character and great concern for the children, in addition to imposing a hardship on her. She also lost weight and suffered significant effects on her health based on the stress of the situation. Defendant also mentioned the loss of her job and respect in the community, but those appeared to be ordinary incidents of this type of crime.

Third, I considered defendant's motive. As I have noted in several post-Booker cases, one thing the guidelines do not account for in white collar cases is the motive for stealing. See, e.g., United States v. Ranum, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005). There is a difference – for sentencing purposes – between stealing out of greed and stealing out of desperation. In the present case, several motives were presented in the

7

letter from defendant's psychologist, Dr. McDonald. The letter stated that defendant first started stealing to buy expensive medication for her son, who has bi-polar disorder, and to pay for her divorce. Later, she stole to provide gifts, including a new truck, for her boyfriend. There was evidence supporting the latter assertion, as the government moved to forfeit the truck registered in the boyfriend's name. There was also evidence that defendant had a history of bad relationships and of being desperate to please those men. According to Dr. McDonald, defendant would benefit from counseling, with an emphasis on increasing her sense of self-worth, which would greatly reduce the probability of recidivism. She had in the past received medication but not counseling. I accepted that defendant's motive in this case was not really greed, and that with counseling her already low likelihood of recidivism would be reduced even further. Defendant also had significant family and community support, which would aid in her re-integration into the community. I found her remorse to be genuine, which also caused me to believe she was unlikely to re-offend.

Fourth, I considered the need to make restitution. The individual victims had been made whole by the bank and its insurer, but defendant still had to make restitution to those institutions. A lengthy prison term would not well-serve that goal. Finally, I noted the loss amount in this case was just over $200,000, barely enough to trigger the 12 level enhancement.

Therefore, for all of these reasons, I concluded that a sentence somewhat below the range would be sufficient to serve the purposes of sentencing. Defendant asked for a sentence of one year and one day in a community correctional facility, but that was insufficient. The mitigating factors mentioned above supported a sentence somewhat

8

below the guidelines, but the needs for punishment and general deterrence required a substantial prison sentence. Although defendant had serious health problems, there was no evidence that they were so serious that they could not be handled by the Bureau of Prisons ("BOP"). I also could not conclude that a sentence with no element of prison confinement was appropriate based on the needs of defendant's children. I may consider the effects of a sentence on the defendant's children, but in the present case, given the presence of their father to care for them, and the need to provide for punishment and deterrence, could not conclude that the sentence defendant suggested was sufficient.

## III.  CONCLUSION

Under all of the circumstances, I found a sentence of 27 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This represented a substantial prison term for someone with no record who was quite unlikely to re-offend and provided sufficient punishment and deterrence. Specifically, this sentence adequately recognized the effects of defendant's mental health issues on her conduct, including the purchase of the truck, which caused her loss figure to exceed $200,000, as well as her positive personal qualities. Because the sentence was based on the particular facts of this case and varied only 2 levels from the guideline range, it did not create unwarranted disparity

Therefore, I committed defendant to the custody of the Bureau of Prisons for 27 months. I recommend that she be considered for a medical facility, be placed as close to her home as possible, and that she participate in substance abuse treatment, including the 500 hour program. I further ordered that she make restitution to the bank and its insurance company, and serve a five year supervised release term, with conditions including, inter

9

alia, drug and mental health treatment. Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 21st day of November, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge